## Case No. 7,292.

In re JERSEY CITY WINDOW GLASS CO.

[1 N. B. R. 426 (Quarto, 113); 1  7 Am. Law Reg. (N. S.) 419: 1 Am. Law T. Rep. Bankr. 61.]

District Court, D. New Jersey. April 8, 1868.

---

1 [Reported by Hon. Robert W. Hughes. District Judge, and here reprinted by permission.]

1 [Reprinted from 1 N. B. R. 426 (Quarto, 113), by permission.]

J. Dixon. for petitioner.
J. F. Randolph, for defendant.

FIELD, District Judge. The only act of bankruptcy alleged in the petition is that the Jersey City Window Glass Company suspended payment of their commercial paper, and did not resume within a period of fourteen days. There is no allegation that this suspension and non-resumption were fraudulent. This, it is contended, is an act of bankruptcy within the meaning of the thirty-ninth section of the bankrupt act [of 1867 (14 Stat. 536)]. I am aware that this construction has been sanctioned and adopted by the judges of several of the district courts. My attention has been more than once called to the opinion of Judge Hall of the Northern district of New York; but with all my respect for his learning and ability, I have never been able to bring my mind to the conclusion which he has reached. The language of the clause under consideration is: "Who being a banker, merchant, or trader, has fraudulently stopped or suspended, and not resumed payment of his commercial paper, within a period of fourteen days." It is insisted that here are two distinct acts of bankruptcy created and described; the first, a fraudulent stopping, which is in itself an act of bankruptcy, and upon which proceedings may at once be instituted; and the second, a mere suspension of payment, without any fraud, and which only becomes an act of bankruptcy by being continued for a period of fourteen days. It is possible, I admit, to read this clause in such a way as to make it seem to bear such a construction. But it can only be done by making a distinct pause after the word "stopped," and then reading in one breath the remaining part of the sentence. But is that the way in which any one would ever think of reading it? Is it the natural and ordinary way? Would not such a construction, to say the least, be a strained one? Would it not be doing violence to the language, and wresting it from its obvious sense and meaning? And would it not make the whole sentence, not only very awkward, but a very ungrammatical one? In this respect. it would be in striking contrast with the rest of the act, in which. as it seems to me, much more attention has been paid to clearness of expression. the correct use of language, and the rules of grammar, than is usual in acts either of our national or state legislatures. But why depart from the plain and obvious meaning of the language employed, and resort to a construction so forced and unnatural? For the purpose, it is said, of carrying out the general intentions of congress in the passage of the bankrupt law. Now it is very well known that this law is in a great measure based upon the English statutes of bankruptcy. Almost every act of bankruptcy enumerated in the thirty-ninth section is to be found in the English statutes. where they are described in substantially the same terms. If, then, the fraudulent stopping of payment by a banker, merchant, or trader of his commercial paper. and the suspension without fraud for a period of fourteen days. were two distinct and well known acts of bankruptcy under the English law, we might naturally expect to find them in our own act, and might very well imagine that we had found them, in the clause referred to, although certainly nor very clearly expressed. But it so happens that there are no such acts of bankruptcy known in the English law. It is true that by their bankrupt acts, the suspension of payment by a debtor is resolved into an act of bankruptcy, by summoning him before the court of bankruptcy, and if such debt is not paid or arranged to the satisfaction of the creditor within a prescribed time, such non-payment or non-arrangement constitutes an act of bankruptcy. But a fraudulent stopping alone, whether followed by a resumption or not, is an act of bankruptcy never before heard of. If, therefore, it was intended by the framers of our act to make this for the first time an act of bankruptcy, it might be presumed that they would have declared their intention in clear and unmistakable language. Certain it is, that we ought not to wrest their language from its plain and obvious meaning in order to infer that they had any such intention. But what is meant by a fraudulent stopping? Does it mean that the debtor is unable to pay. that he is insolvent? If so. he ought to stop. He has no right under these circumstances to pay one creditor to the exclusion of another. This of itself would be an act of bankruptcy. It must mean, therefore, if it means anything. an unwillingness to pay, although he has the means of doing so. But suppose he pays the day after his commercial paper arrives at maturity. Would not that negative the idea of fraud? Must we not wait, therefore, to see whether payment is resumed within a reasonable time, before we pronounce the original suspension to be fraudulent? Undoubtedly the stopping payment might be accompanied by circumstances which would clearly indicate a fraudulent purpose; such. for instance, as the concealment or removal of property or

the fraudulent sale or conveyance of it. But these would be in themselves independent acts of bankruptcy, upon which proceedings might be instituted. But how the mere act of suspension, if followed by resumption within a few days, could be deemed fraudulent, I do not very well see. I do not believe, therefore, it was the intention of congress to make the stopping of payment, under any circumstances, an act of bankruptcy in itself, and without reference to resumption. If the debtor is perfectly solvent, and if he resumes payment within the fourteen days, so that no one is defrauded, why should he be adjudged a bankrupt?

What, then, is the true meaning and intent of the clause in question? I understand it to mean, according to the obvious sense of the language made use of, that when a banker, merchant, or trader fraudulently stops or suspends payment of his commercial paper, and does not resume within fourteen days, he commits an act of bankruptcy. To constitute the act, there must be a stopping or suspension of payment, and also a non-resumption within fourteen days, and such suspension and non-resumption must be fraudulent in the sense in which that term is here employed. If the debtor is able to pay, if he has the means of paying, and does not do so, then undoubtedly he commits a fraud upon the creditor who holds his paper. And if he is unable to pay, if he is insolvent, then he commits a fraud upon his other creditors, by not having himself declared a bankrupt, and making a surrender of his property to be equally distributed among them. It will be seen that this act of bankruptcy is confined to bankers, merchants, and traders, and that it extends only to the non-payment of commercial paper, that is, to negotiable securities, to bills of exchange and promissory notes. These are securities of a peculiar kind, well known to the law, and held in high respect. There is an especial dishonor attached to their non-payment. There is a sort of commercial sanctity about them. They are intended to pass from hand to hand; they are valuable instruments of commerce; they perform many of the functions of money. If, therefore, a banker, merchant, or trader suffers paper of this description to be dishonored, and does not resume payment within fourteen days, it argues such a state of insolvency on his part, as to make it a fraud upon his creditors not to surrender his property for equal distribution among them. Such a suspension and non-resumption may well be termed fraudulent. I do not mean to say that it would be conclusive evidence of fraud, but it would certainly be prima facie evidence, and it would cast upon the debtor the burden of proving that he was perfectly solvent, and that such suspension and non-resumption would not have the effect of defrauding either the holders of his dishonored paper, or any of his other creditors. Such a construction of the clause in question makes the whole consistent and intelligible, and would render it somewhat analogous to that provision of the English bankrupt law, to which I have adverted.

It would be difficult to imagine any case better calculated than the one now before the court, to illustrate the justice and propriety of such a provision. It is alleged on the part of the debtor, and not denied by the counsel of the company, that they have issued a series of promissory notes, falling due at successive periods, and that they are utterly unable to pay them. It is admitted, also, that they had it in contemplation to apply by their petition to be declared bankrupts, but that upon taking the advice of counsel they concluded not to do so. Now it would be a serious defect in our bankrupt act, if no provision were made by which the creditors of such a company could compel them to surrender all their estate and effects for the benefit of their creditors, without proving any other facts than their continued suspension and utter insolvency. If, therefore, it had been alleged in this case that such suspension and non-resumption within fourteen days were fraudulent, I should have had no hesitation in declaring it to be an act of bankruptcy. I see no objection, however, to allowing the petition to be amended by the insertion of that word.